## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| CRAIG WEGNER, RONALD L. SIEMENS, and BRENT GEETINGS, *on behalf of themselves and all others similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>PELLA CORPORATION,<br><br>Defendants. | No. 2:14-mn-00001-DCN<br>No. 2:14-mn-01993-DCN<br><br>**ORDER** |

This matter is before the court on a motion to dismiss brought by defendant Pella Corporation ("Pella"). The court grants in part and denies in part Pella's motion as set forth below.

## I.  BACKGROUND

Plaintiff Craig Wegner ("Wegner") purchased Pella Architect and Designer Series windows when his home was constructed in the fall of 2000. Am. Compl. ¶ 55. In or about 2012, Wegner discovered problems with his windows, including that the windows "allowed water to intrude into [his] home resulting in other property damage to his home," such as the home's structure, wall cavity, adjoining finishes and walls, and "other personal property within his home." Id. ¶ 58.

Plaintiff Brent Geetings ("Geetings") purchased Pella Architect and Designer Series windows directly from Pella in or about October 2003. Id. ¶ 60. Between 2010 and 2013, Geetings noticed that his windows were leaking and contacted Pella. Id. ¶ 67. Pella replaced some of the windows, but required Geetings to pay for the installation

1

himself.  Id.  Geetings alleges that several of his windows currently show signs of damage.  Id. ¶ 68.

Plaintiff Ronald L. Siemens ("Siemens") built his home with a general contractor and a certificate of occupancy was issued for the home in 2005.  Id. ¶ 69.  Siemens purchased Pella Designer Series windows from a Pella store in Fort Dodge, Iowa.  Id. ¶ 70.  Siemens contacted Pella "several times throughout the years due to problems with the Windows in his home."  Id. ¶ 75.  While Pella has sent service people to inspect his home, it has not replaced any of his windows, despite the fact that water allegedly continues to intrude.  Id.

Plaintiffs allege that the windows are defective because water permeates the window unit through four leakage paths:  (1) the glazing pocket; (2) the aluminum cladding and wood; (3) the crank hardware and fasteners; and (4) the frame-to-sash joint.  Id. ¶ 13.  Plaintiffs allege that these defects cause the windows' wood to rot and water to leak into the interior of the home.  Id. ¶¶ 15–18.  Plaintiffs further allege that Pella was aware, or but for its negligence should have been aware, of the defect and when questioned about wood rot, claimed faulty installation or excessive moisture in the homes.  Id. ¶¶ 21–26.

On January 7, 2014, Wegner filed a class action complaint against Pella in the United States District Court for the Southern District of Iowa, alleging jurisdiction based on the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  Wegner amended his complaint on July 2, 2014, adding Siemens and Geetings as plaintiffs and bringing the following eleven causes of action:  (1) violation of the Iowa Consumer Fraud Act ("ICFA"); (2) negligence; (3) negligent misrepresentation; (4) breach of implied warranty

of merchantability; (5) breach of implied warranty of fitness for a particular purpose; (6) breach of express warranty; (7) fraudulent misrepresentation; (8) fraudulent concealment; (9) unjust enrichment; (10) violation of the Magnuson-Moss Warranty Act ("MMWA"); and (11) declaratory relief.

On May 20, 2014, the United States Panel on Multidistrict Litigation transferred the case to this court as part of the consolidated multidistrict litigation. Pella filed the instant motion to dismiss on August 1, 2014. Plaintiffs opposed the motion on August 25, 2014, and Pella replied on September 8, 2014. Pella's motion to dismiss has been fully briefed and is ripe for the court's review.

## II. STANDARDS

### A.    Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. See E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief." Id. at 679. Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "Facts pled that are 'merely consistent with' liability are not sufficient." A Soc'y Without a Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

### B.    Applicable Law

This case is predicated on diversity jurisdiction and was filed in federal court, so it is governed by state substantive law and federal procedural law. Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 416 (2010) (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965)). "In multidistrict litigation, the law of the transferee circuit governs questions of federal law." In re KBR, Inc., 736 F. Supp. 2d 954, 957 (D. Md. 2010) modified on reh'g sub nom. In re KBR, Inc., Burn Pit Litig., 925 F. Supp. 2d 752 (D. Md. 2013) vacated and remanded on other grounds, 744 F.3d 326 (4th Cir. 2014); see also In re Gen. Am. Life Ins. Co. Sales Practices Litig., 391 F.3d 907, 911 (8th Cir. 2004); Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993); In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1176 (D.C. Cir. 1987); cf. Bradley v. United States, 161 F.3d 777, 782 n.4 (4th Cir. 1998) (applying Fourth Circuit law to questions of federal law in a case transferred from the Fifth Circuit). Therefore, this court must apply Iowa substantive law and Fourth Circuit procedural law.

### III.  DISCUSSION

Pella asserts that plaintiffs' complaint should be dismissed in its entirety. The court will first determine whether the applicable statutes of limitation are tolled by equitable tolling or class action tolling. The court will then consider Pella's arguments about each claim individually.

**A.    Tolling**

Pella argues that some of plaintiffs' claims are barred by their respective statutes of limitation.  While the specific statutes of limitation applicable those claims will be discussed below, the parties disagree about the application of two tolling doctrines to the statutes of limitation:  equitable tolling/fraudulent concealment and class action tolling. The court considers these doctrines in turn.

**1.    Equitable Tolling/Fraudulent Concealment**

Plaintiffs first argue that Pella is estopped from relying on any statute of limitations defense because it fraudulently concealed that its windows were defective. Am. Compl. ¶ 822; Pls.' Resp. 13.

Under Iowa law, "the doctrine of fraudulent concealment [is] a form of equitable estoppel."  See Christy v. Miulli, 692 N.W.2d 694, 701 (Iowa 2005).  "[F]raudulent concealment does not affect the running of the statutory limitations period; rather, it estops a defendant from raising a statute-of-limitations defense."  Id. (citing 51 Am. Jur. 2d Limitation of Actions § 380 (2000)).  Fraudulent concealment is "intended to prevent a party from benefiting from the protection of a limitations statute when by his own fraud he has prevented the other party from seeking redress within the period of limitations." Id. at 702 (citation and internal quotation marks omitted).  The circumstances justifying equitable estoppel end when "'[the] plaintiff [becomes] aware of the fraud, or by the use of ordinary care and diligence should have discovered it.'"  Id. (quoting Faust v. Hosford, 93 N.W. 58, 59 (Iowa 1903)).  To establish entitlement to equitable estoppel, a plaintiff must show:

> (1) The defendant has made a false representation or has concealed material facts; (2) the plaintiff lacks knowledge of the true facts; (3) the defendant intended the plaintiff to act upon such representations; and (4) the plaintiff did in fact rely upon such representations to his prejudice.

Id. (citing Meier v. Alfa-Laval, Inc., 454 N.W.2d 576, 578–79 (Iowa 1990)).  The Iowa Supreme Court has noted that with the first element requires "some affirmative act to conceal the plaintiff's cause of action independent of and subsequent to the liability-producing conduct."  Id. (emphasis added).

Because fraudulent concealment invokes fraud, the heightened pleading standards of Federal Rule of Civil Procedure 9(b) apply.  Great Plains Trust Co. v. Union Pac. R. Co., 492 F.3d 986, 995 (8th Cir. 2007); Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp., 546 F.2d 570, 573–74 (4th Cir. 1976).[1]  As discussed in more detail below, plaintiffs fail to plead any affirmative act on the part of Pella with the particularity required by Rule 9(b).  Therefore, the statutes of limitation applicable to plaintiffs' claims are not equitably tolled.

### 2.　　Class Action Tolling

Plaintiffs also contend that the filing of a previous class action in federal court in the Northern District of Illinois, Saltzman v. Pella, tolled the statutes of limitation for their claims.  Pls.' Resp. 11.

The doctrine of class action tolling was first announced in American Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974).  In American Pipe, the Supreme Court held that an applicable statute of limitations is tolled during the pendency of a class action for

---

[1] Charlotte Telecasters does not cite Rule 9(b), but contains the following analysis:  "[a] complainant, [to avoid the statute of limitations,] must state in his bill distinctly the particular act of fraud, misrepresentation, or concealment . . . .  The charges must be definite and reasonably certain, capable of proof, and clearly proved . . . ."  546 F.2d at 574.

putative class members who intervene after the denial of class certification—at least

where certification is denied for failure to meet the numerosity requirement of Federal

Rule of Civil Procedure 23.  Id. at 552–53; see also id. at 554 ([T]he commencement of a

class action suspends the applicable statute of limitations as to all asserted members of

the class who would have been parties had the suit been permitted to continue as a class

action.").  The Supreme Court has extended the American Pipe rule to purported

members of the class who later file individual suits rather than intervene.  Crown, Cork &

Seal Co. v. Parker, 462 U.S. 345, 350 (1983).

    American Pipe tolling, however, applies only to a "subsequently filed federal

question action . . .  during the pendency of a federal class action."  Wade v. Danek Med.,

Inc., 182 F.3d 281, 286 (4th Cir. 1999) (citing American Pipe, 414 U.S. 552–53)

(emphasis added); see also Vincent v. Money Store, 915 F. Supp. 2d 553, 560–61

(S.D.N.Y. 2013) ("The American Pipe case concerned the tolling of claims under a

federal statute, the Sherman Act.  It did not purport to announce a rule that would apply

to state law claims. . . .  The plaintiffs cannot rely on American Pipe to toll the statutes of

limitations for their state law claims.  The plaintiffs must look to any state analogue to

American Pipe tolling rather than American Pipe itself.").  Therefore, the court must

determine whether Iowa law would toll the statutes of limitation during the pendency of

the Saltzman federal class action.

    This case deals with what has been termed "cross-jurisdictional" class action

tolling—that is, tolling during the pendency of a class action in another court, in this case

a federal court in Illinois.  See Wade, 182 F.3d at 287 (defining cross-jurisdictional class

action tolling).  Plaintiffs do not provide—and the court has not found—any authority

indicating that Iowa has adopted cross-jurisdictional class action.  The Fourth Circuit has

been reluctant to read cross-jurisdictional tolling into state law where it is otherwise

silent.  Wade, 182 F.3d 281, 287 (4th Cir. 1999) (applying Virginia law); see also

Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1025 (9th Cir. 2008) (declining to

import a cross-jurisdictional tolling rule into California law, which otherwise does not

have such a rule, and finding that "[t]he rule of American Pipe—which allows tolling

within the federal court system in federal question class actions—does not mandate cross-

jurisdictional tolling as a matter of state procedure"); Soward v. Deutsche Bank AG, 814

F. Supp. 2d 272, 282 (S.D.N.Y. 2011) (holding that New York would not apply cross-

jurisdictional tolling and noting that the "few states that have considered the issue have

been split in both their acceptance of cross-jurisdictional tolling and the rationale for their

decision").  Moreover, the Iowa Supreme Court has instructed that courts should not

"engraft exceptions" onto statutorily prescribed limitations periods.  Harrington v.

Toshiba Mach. Co., 562 N.W.2d 190, 192 (Iowa 1997).

     In short, Iowa has not adopted cross-jurisdictional class action tolling and the

court declines to establish such a rule in the first instance.  See St. Paul Fire & Marine

Ins. Co. v. Jacobson, 48 F.3d 778, 783 (4th Cir. 1995) ("[T]he federal courts in diversity

cases, whose function it is to ascertain and apply the law of a State as it exists, should not

create or expand that State's public policy.").  Therefore, the statutes of limitation for

plaintiffs' claims are not tolled by class action tolling.

### B.     Count I—Violation of the ICFA

     Pella argues that plaintiffs' ICFA claims should be dismissed because plaintiffs

do not plead fraud with particularity as required by Rule 9(b) and because applying the

ICFA would be unconstitutional under the <u>ex post facto</u> clause of the United States and Iowa Constitutions.  Pella also argues that Geetings's and Siemens's ICFA claims are barred by the statute of limitations.  The court will consider each of these arguments in turn.

### 1.    Rule 9(b)

Pella argues that plaintiffs' ICFA claims should be dismissed because they fail to plead fraud with the particularity required by Rule 9(b).  Def.'s Mot. 7.

Rule 9(b) provides that a party alleging fraud "must state with particularity the circumstances constituting fraud."  <u>See</u> <u>Grodzitsky v. Am. Honda Motor Co.</u>, 2013 WL 690822, at *9 n.11 (C.D. Cal. Oct. 10, 2013) (applying Rule 9(b) to ICFA claim).  Rule 9(b) ensures that defendants have adequate notice of the conduct complained of, protects them from frivolous suits, eliminates fraud actions in which all the facts are learned after discovery, and protects defendants from harm to their goodwill and reputation.  <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted).  In order to satisfy Rule 9(b), the complaint must allege the "who, what, when, where and how of the alleged fraud," <u>U.S. ex rel. Ahumada v. NISH</u>, 756 F.3d 268, 280 (4th Cir. 2014), or the "first paragraph of any newspaper story."  <u>Great Plains Trust Co. v. Union Pac. R.R. Co.</u>, 492 F.3d 986, 995 (8th Cir. 2007); <u>see also</u> <u>U.S. ex rel. Elms v. Accenture LLP</u>, 341 F. App'x 869, 872 (4th Cir. 2009) (holding Rule 9(b) requires a plaintiff to allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby").

However, many courts have recognized the difficulty of applying Rule 9(b)'s particularity requirement to fraudulent concealment or omission claims and have instead

applied a relaxed, less formulaic version of the rule.  See, e.g., Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC, 929 F. Supp. 2d 502, 533 (D. Md. 2013) (holding that Rule 9(b) is "less strictly applied" with respect to claims of fraud by omission of material facts, because "an omission cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation"); Carideo v. Dell, Inc., 706 F. Supp. 2d 1122, 1133 (W.D. Wash. 2010) ("The Rule 9(b) standard is relaxed in fraudulent omission cases" because in such cases, "a plaintiff will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." (internal quotation marks omitted)); In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., 684 F. Supp. 2d 942, 961 (N.D. Ohio 2009) ("Requiring a plaintiff to identify (or suffer dismissal) the precise time, place, and content of an event that (by definition) did not occur would effectively gut state laws prohibiting fraud-by-omission."); Bonfield v. AAMCO Transmissions, Inc., 708 F. Supp. 867, 875 (N.D. Ill. 1989) ("Like Sherlock Holmes' dog that did not bark in the night, an actionable omission obviously cannot be particularized as to the time, place, and contents of the false representations or the identity of the person making the misrepresentation." (internal quotation marks omitted)).

Although the Fourth Circuit has not adopted this relaxed Rule 9(b) standard, a relaxed standard comports with the Fourth Circuit's instruction that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir.

10

1999).  Additionally, the court finds the reasoning supporting a relaxed standard persuasive and therefore will apply it to plaintiffs' ICFA claims to the extent they assert fraudulent omissions or concealment.

To the extent plaintiffs' claims are based on affirmative misrepresentations, the complaint is completely lacking in detail as to who made the misrepresentations, when they were made, or where they were made.  Therefore, the complaint fails to plead with particularity any fraudulent misrepresentation.

Whether plaintiffs' allegation of fraudulent omissions satisfies the relaxed Rule 9(b) standard is a closer question.  Plaintiffs' amended complaint is not overly-detailed, but, as described above, the nature of a fraudulent omission makes it difficult to plead with detail.  In a case with similar facts, a Maryland district court held that the plaintiffs had properly pleaded fraudulent concealment with particularity where they alleged:  that the defendant was aware of a product defect and how the defendant became aware of the defect; that the defendant concealed the defect from the plaintiffs; and that the plaintiffs would have taken different actions had they known about the defect.  Doll v. Ford Motor Co., 814 F. Supp. 2d 526, 538–39 (D. Md. 2011); see also Whirlpool Corp., 684 F. Supp. 2d at 961.

Since plaintiffs have pleaded facts similar to those alleged in Doll—that Pella was aware of a defect, that Pella concealed the defect from consumers, and that plaintiffs would have taken different action had they known about the defect—the court denies

Pella's motion to dismiss plaintiffs' ICFA claims to the extent they are based on fraudulent omissions.[2]

**2.     <u>Ex Post Facto</u> Clause**

Next, Pella argues that the ICFA cannot be applied to conduct occurring before 2009 under the <u>ex post facto</u> clause of the United States and Iowa Constitutions.  Def.'s Mot. 11.

The enacting language of the ICFA states that it "applies to causes of actions accruing on or after [July 1, 2009,] the effective date of this Act."  2009 Iowa Legis. Serv. Ch. 167 (H.F. 712).  A claim "must be brought within two years of the occurrence of the last event giving rise to the cause of action under this chapter or within two years of the discovery of the violation of this chapter by the person bringing the action, whichever is later."  Iowa Code Ann. § 714H.5(5).  Both sides seem to assume that these two provisions, taken together, allow the ICFA to apply retrospectively to actions taken before it was enacted as long as the plaintiff did not discover the violation until after the enactment date.  <u>See</u> Pls.' Resp. 16; Def.'s Reply 7.  Under Iowa law, "[a] statute is presumed to be prospective in its operation unless expressly made retrospective."  Iowa Code Ann. § 4.5.  Because the parties do not contest that the ICFA is retrospective, the court will assume, without deciding, that the Iowa Legislature expressly made the ICFA retrospective through the two provisions cited above.

---

[2] Although the parties have not briefed the issue, it appears that fraudulent omissions or concealment are actionable under the ICFA.  <u>See</u> Iowa Code Ann. § 714H.3(1) ("A person shall not engage in a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, <u>concealment, suppression, or omission</u> of a material fact . . . ." (emphasis added)).

However, the court cannot retroactively apply the ICFA if such an application would conflict with the ex post facto clauses of the United States and Iowa Constitutions. Both the United States and Iowa Constitutions prohibit the Iowa Legislature from enacting ex post facto laws.  U.S. Const. art. I, § 9, cl. 3; Iowa Const. art. I, § 21. Specifically, the prohibition on ex post facto laws forbids Congress and the states from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." Weaver v. Graham, 450 U.S. 24, 28 (1981) (citation omitted); see also State v. Corwin, 616 N.W.2d 600, 601 (Iowa 2000) ("These constitutional provisions forbid the application of a new punitive measure to conduct already committed.").

The Supreme Court has set forth a "well established" two-step framework for determining whether a law violates the ex post facto clause.  Smith v. Doe, 538 U.S. 84, 92 (2003).  The threshold question in the analysis is "whether the legislature meant the statute to establish 'civil' proceedings."  Id. (citing Kansas v. Hendricks, 521 U.S. 346, 361 (1997)).  "If the intention of the legislature was to impose punishment, that ends the inquiry, and the ex post facto clause applies."  Id.  However, if the legislature's intention was to enact a civil and nonpunitive regulatory scheme, the court must further examine whether the statutory scheme is "so punitive either in purpose or effect as to negate [the State's] intention to deem it civil."  Id. (citation and internal quotation marks omitted).

### a.    Legislative Intent

Whether a statutory scheme is civil or criminal "is first of all a question of statutory construction."  Smith, 538 U.S. at 92 (citing Hendricks, 521 U.S. at 361).  The court considers both the statute's text and its structure to determine the legislative

objective.  Id.  In doing so, "courts must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other."  Id. at 93 (citing Hudson v. United States, 522 U.S. 93, 99 (1997)).  Other formal attributes of a legislative enactment, such as the manner of its codification or the enforcement procedures it establishes, are probative of the legislature's intent.  Id. at 94 (citations omitted).

Several factors seem to indicate that the Iowa Legislature intended the ICFA to impose punishment.  First, the ICFA is contained within the Iowa criminal code.  Additionally, the ICFA contains a subsection titled "Attorney General Notification," which requires a party to notify the Iowa attorney general of any pleading alleging violation of the ICFA, any final judgment in such an action, and any appeal involving issues related to the ICFA.  Iowa Code Ann. § 714H.6.  The attorney general "may intervene as a party at any time" or "bring[] a separate enforcement action," id., and consumers bringing class actions must seek and obtain approval from the attorney general prior to filing, id. § 714H.7.  Finally, in certain situations, the ICFA provides for treble damages.  Id. § 714H.5(4) ("If the finder of fact finds by a preponderance of clear, convincing, and satisfactory evidence that a prohibited practice or act in violation of this chapter constitutes willful and wanton disregard for the rights or safety of another, in addition to an award of actual damages, statutory damages up to three times the amount of actual damages may be awarded to a prevailing consumer.").

On the other hand, several factors indicate that the Iowa Legislature intended the ICFA to establish civil proceedings.  First, the Act, by its title, creates "Private Right of Action."  Iowa Code Ann. § 714H.1.  A private right of action is more akin to civil

proceedings than criminal punishment.  Next, the ICFA itself does not require any safeguards generally associated with the criminal process.  This suggests that "the legislature envisioned the Act's implementation to be civil . . . ."  Smith, 538 U.S. at 96.  In addition, the ICFA requires the standard of proof customary in civil litigation:  "by a preponderance of the evidence."  Iowa Code Ann. § 714H.5(3); see Sanders v. Allison Engine Co., 703 F.3d 930, 943 (6th Cir. 2012) (finding that Congress intended to implement civil proceedings by enacting False Claims Act and noting that the preponderance of the evidence burden of proof was "common to civil litigation").  While recovery of treble damages requires a higher degree of proof—"by a preponderance of clear, convincing, and satisfactory evidence"—it still does not require proof beyond a reasonable doubt, the classical criminal burden of proof.  Id. § 714H.5(4).

While the ICFA is contained in the Iowa criminal code, "[t]he location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one."  Smith, 538 U.S. at 94; see id. at 95 ("The partial codification of the Act in the State's criminal procedure code is not sufficient to support a conclusion that the legislative intent was punitive.").  The Iowa Supreme Court has held that a similar provision dealing with consumer fraud which is also contained within the criminal code, Iowa Code Ann. § 714.16, does not involve perpetration of a crime.  Grinnell Mut. Reinsurance Co. v. Jungling, 654 N.W.2d 530, 537 (Iowa 2002).  Therefore, the ICFA's place in the criminal code is not dispositive of the legislature's intent.  Moreover, an action for violation of § 714.16 can only be brought by the attorney general.  Thus, the ICFA's attorney general notification requirements are also not dispositive of the legislature's intent.

Besides the treble damages provision, which is discussed at length below, the ICFA has all the hallmarks of civil litigation—it gives private parties a cause of action to recover damages resulting from a defendant's violation of the ICFA if proved by a preponderance of the evidence.  See Smith, 538 U.S. at 96 ("By contemplating 'distinctly civil procedures,' the legislature 'indicate[d] clearly that it intended a civil, not a criminal sanction.'" (quoting United States v. Ursery, 518 U.S. 267, 289 (1996))).

Therefore, the court finds that the Iowa Legislature intended the ICFA to implement civil proceedings for combating fraud and not to impose punishment.

### b.        Punitive in Purpose or Effect

Because the court finds that the Iowa Legislature did not intend to impose punishment when it enacted the ICFA, it must turn to the second step in the ex post facto analysis and determine whether the statutory scheme is "so punitive either in purpose or effect as to negate [the state's] intention to deem it civil."  Hendricks, 521 U.S. at 361 (internal quotation marks omitted).  "[O]nly the clearest proof will suffice to override that intent and transform what has been denominated a civil remedy into a criminal penalty."  Smith, 538 U.S. at 85.

When examining the effects of a statutory scheme, courts use the seven factors laid out by the Supreme Court in Kennedy v. Mendoza-Martinez:  (1) whether the sanction involves an affirmative disability or restraint; (2) whether the sanction has historically been regarded as a punishment; (3) whether the sanction comes into play only on a finding of scienter; (4) whether operation of the sanction will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which the sanction applies is already a crime; (6) whether an alternative purpose to which it may

rationally be connected is assigned to the sanction; and (7) whether the sanction appears excessive in relation to the alternative purpose assigned.  372 U.S. at 168–69.  While these factors are neither exhaustive nor dispositive, they provide a framework for the analysis.  Smith, 538 U.S. at 97.

### i.    Affirmative Disability

The first Mendoza-Martinez factor considers whether the sanction involves an affirmative disability or restraint, which courts have defined as a "sanction approaching the infamous punishment of imprisonment."  Cutshall v. Sundquist, 193 F.3d 466, 474 (6th Cir. 1999).  Because the ICFA does not involve a sanction approaching imprisonment, this factor favors the conclusion that the ICFA has a civil purpose or effect.

### ii.    Historical Perspective, Alternative Purpose, & Excessiveness

Under the interrelated second, sixth, and seventh sixth factors, the court must determine whether the sanction has been viewed as punishment from a historical perspective, whether the sanction serves an alternative purpose, and whether the sanction appears excessive in relation to the alternative purpose.  Here, the sanction at issue is money.  The Supreme Court has noted that "the payment of fixed or variable sums of money [is a] sanction which ha[s] been recognized as enforcible by civil proceedings since the original revenue law of 1789."  Hudson, 522 U.S. at 104 (citing Helvering v. Mitchell, 303 U.S. 391, 399 (1938)) (alterations in Hudson).  Moreover, the monetary penalty in this case is obviously remedial to some degree, seeking to compensate plaintiffs for losses suffered due to fraud.

However, the court must also consider that the ICFA provides for treble damages in certain circumstances.  The Supreme Court has "placed different statutory treble-damages provisions on different points along the spectrum between purely compensatory and strictly punitive awards."  PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 405 (2003).  In Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 485 (1977), the Court held that the treble damages provision of § 4 of the Clayton Act was "in essence a remedial provision."  See also Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp., 456 U.S. 556, 575 (1982) (" [T]he antitrust private action was created primarily as a remedy for the victims of antitrust violations.").  In the context of the antitrust laws, the Supreme Court has also held that "[t]he very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers."  Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 639 (1981). The Supreme Court has acknowledged that the treble damages provision contained in RICO is remedial in nature.  Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 241 (1987).  Finally, the Supreme Court has held that the False Claim Act's ("FCA") treble damages provision is "essentially punitive in nature," Vermont Agency of Natural Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 784 (2000), but has noted that "treble damages have a compensatory side, serving remedial purposes in addition to punitive objectives."  Cook Cnty., Ill. v. U.S. ex rel. Chandler, 538 U.S. 119, 130 (2003).  As these cases make apparent, "the tipping point between payback and punishment defies general formulation, being dependent on the workings of a particular statute and the course of particular litigation."  Id.

Notably, the treble damages provision of the ICFA differs in important ways from the various treble damages provisions examined by the Supreme Court.  The treble damages provisions in the antitrust laws, RICO, and the FCA are contained in the general remedial provisions indicating the recovery to which a plaintiff is entitled.  <u>See</u> 15 U.S.C. § 15 ("[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws . . . shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."); 31 U.S.C. § 3729(a)(1) ("[A]ny person who [violates the FCA] is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 . . . plus 3 times the amount of damages which the Government sustains because of the act of that person."); 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a [violation of RICO] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.").

The damages provisions of the ICFA are structured differently.  First, Iowa Code § 714H.5(1) provides that "[a] consumer who suffers an ascertainable loss of money or property as the result of a prohibited practice or act in violation of this chapter may bring an action at law to recover actual damages."  The next subsection, § 714H.5(2), provides that a successful plaintiff shall be awarded costs of the action and reasonable attorneys' fees.  Finally, § 714H.5(4) provides that "statutory damages up to three times the amount of actual damages may be awarded to a prevailing consumer."  Importantly, treble damages are awarded "<u>in addition to</u> an award of actual damages," <u>id.</u>, effectively

permitting quadruple recovery.[3]  Moreover, treble damages are only recoverable upon meeting a higher burden of proof—"preponderance of clear, convincing, and satisfactory evidence"—and showing a higher degree of culpability—"willful and wanton disregard for the rights or safety of another."  Id.

When a monetary penalty is entirely contained within the same provision, as in the antitrust laws, RICO, and the FCA, finding "the tipping point between payback and punishment" can be difficult.  Chandler, 538 U.S. at 130.  However, the structure of the ICFA makes finding that tipping point easier.  It is clear that § 714H.5(1) and (2) are remedial provisions.  The court finds that the ICFA's separate treble damages provision—which requires a higher burden of proof, higher degree of culpability, and entitles plaintiffs to quadruple recovery—is predominantly a punitive provision.[4]  Therefore, the second and sixth factors weigh heavily in favor of finding that the ICFA sanctions are punitive.  Likewise, the court finds that the quadruple damages recoverable under the ICFA far exceed those necessary to compensate a consumer for its loss, which weighs in favor of finding that the treble damages provision is punitive.

---

[3] Notably, when Congress raised the ceiling on damages recoverable under the FCA from double to treble, the Supreme Court described the change "as turning what had been a 'remedial' provision into an 'essentially punitive' one."  Chandler, 538 U.S. at 130 (quoting Stevens, 529 U.S. at 784–85).

[4] The court also notes that certain rationales expounded by the Supreme Court for finding the treble damages provisions of the antitrust laws and the FCA remedial are not relevant to the ICFA.  For instance, the Court held that treble damages under the antitrust laws "make the remedy meaningful by counter-balancing the difficulty of maintaining a private suit."  Hydrolevel, 456 U.S. at 575.  There is no indication that a consumer fraud action is similarly difficult to maintain.  With regard to the FCA, the Court noted that treble damages are important because under the qui tam provision, private plaintiffs can bring suit on behalf of the government and keep a percentage of the damages award, thus diverting part of the government's recovery.  Cook Cnty., 538 U.S. at 131.  The ICFA does not contain a qui tam provision.

### iii.    Scienter

Moving to the next factor, the court must determine whether a violation of the ICFA contains an element of scienter.  Courts have held that the scienter requirement is satisfied by a statute that requires a person to act "knowingly," which "signif[ies] a defendant's guilty knowledge."  Cutshall v. Sundquist, 193 F.3d 466, 475 (6th Cir. 1999).  Other courts have held that a statute that requires a violation to be "willful" can also establish scienter because such a requirement does not "impose criminal penalties on innocent or negligent errors."  United States v. Zhen Zhou Wu, 711 F.3d 1, 15 (1st Cir. 2013) (citing United States v. Davis, 583 F.2d 190, 193 (5th Cir.1978)); see also Screws v. United States, 325 U.S. 91, 102 (1945) ("The requirement that the act must be willful or purposeful . . . relieve[s] the statute of the objection that it punishes without warning an offense of which the accused was unaware.").

A violation of the ICFA does not require knowledge.  See Iowa Code § 714H.3(1) ("A person shall not engage in a practice or act the person knows or reasonably should know is an unfair practice . . . .").  However, recovery of treble damages requires that a defendant acted with "willful and wanton disregard for the rights or safety of another." Id. § 714H.5(4) (emphasis added).  While treble damages do not explicitly require knowledge, the requirement that the act be "willful" weighs at least somewhat in favor of finding that the treble damages provision is punitive.

### iv.    Punishment-Retribution and Deterrence

The next Mendoza-Martinez factor is whether operation of the sanction will promote the traditional aims of punishment-retribution and deterrence.  The treble damages provision has a deterrent effect, especially considering that "compensation is

fully provided by other provisions of the statute." <u>Massachusetts v. Schering-Plough Corp.</u>, 779 F. Supp. 2d 224, 236–37 (D. Mass. 2011). Therefore, this factor weights in favor of finding that the ICFA treble damages provision is punitive.

### v.    Behavior Already a Crime

The final factor is whether the behavior targeted is already a crime. Both parties contend that prior to the enactment of the ICFA, the same conduct was prohibited by Iowa Code § 714.16. Pls.' Resp. 16; Def.'s Reply 9. However, that section provides that "[a] <u>civil action</u> pursuant to this section shall be by equitable proceedings." Iowa Code Ann. § 714.16(7) (emphasis added). Additionally, the Iowa Supreme Court has held that violation of § 714.16 does not amount to perpetration of a crime because the statute does not provide punishment for its violation. <u>Grinnell Mut. Reinsurance Co. v. Jungling</u>, 654 N.W.2d 530, 537 (Iowa 2002). Consumer fraud was not a crime before the enactment of the ICFA. Regardless, the court affords this factor little weight.

### vi.    Conclusion

After analyzing the <u>Martinez-Mendoza</u> factors, the court finds by the clearest proof that the treble damages provision of the ICFA is "so punitive either in purpose or effect" as to transform the provision into a criminal penalty for <u>ex post facto</u> purposes. Especially important to the court's analysis are the facts that the treble damages provision is separate from the remedial provision providing for recovery of actual damages and that recovery of treble damages would result in a quadruple recovery.

Because all of Pella's relevant conduct took place before 2009, plaintiffs, should they prevail, will be unable to recover treble damages under the ICFA should they prevail. However, because the ICFA contains a severability clause, Iowa Code Ann. §

714H.8, the court finds that applying the remaining remedial provisions of the ICFA to plaintiffs here does not violate the ex post facto clause.

### 3.     Statute of Limitations

Lastly, with regard to the ICFA claims, Pella argues that Geetings's and Siemens's ICFA claims should be dismissed because they are barred by the statute of limitations.

As discussed above, plaintiffs must bring an action under the ICFA "within two years of the occurrence of the last event giving rise to the cause of action under this chapter or within two years of the discovery of the violation of this chapter by the person bringing the action, whichever is later."  Iowa Code Ann. § 714H.5(5).  Under Iowa law, "[t]he discovery rule tolls the statute of limitations until the plaintiff has discovered the fact of the injury and its cause or by the exercise of reasonable diligence should have discovered these facts."[5]  Hallett Const. Co. v. Meister, 713 N.W.2d 225, 231 (Iowa 2006) (citation and internal quotation marks omitted).  "Once a claimant learns information that would inform a reasonable person of the need to investigate, the claimant is on inquiry notice of all facts that would have been disclosed by a reasonably diligent investigation."  Id. (citation and internal quotation marks omitted).  In other words, an action accrues when a plaintiff has knowledge of "all of the facts they needed to know to be charged with a duty to investigate to determine the existence of a cause of action against defendant."  Franzen v. Deere & Co., 377 N.W.2d 660, 664 (Iowa 1985).

---

[5] Pella argues that case law discussing the discovery rule for tolling purposes is not directly applicable to the ICFA because it contains its own accrual provision.  Def.'s Reply 2 n.1.  However, the court finds case law discussing the discovery rule relevant to how Iowa courts would interpret the ICFA's statute of limitations, since the Act was fairly recently enacted and the Iowa courts have not considered its statute of limitations in any detail.

### a.     Geetings's ICFA Claim

Geetings alleges that he began to notice that his windows were leaking in 2010.
Am. Compl. ¶ 67.  Plaintiffs' ICFA claims stem from the allegation that Pella did not
disclose the fact that their windows were defective.  Id. ¶¶ 91–96.  As of 2010, Geetings
had discovered that the windows were defective or, at the very least, was on notice of all
facts that would have been disclosed by a reasonably diligent investigation.  Therefore,
because this action was filed more than two years later, his ICFA claim is barred by the
statute of limitations.

### b.     Siemens's & Wegner's ICFA Claims

Pella argues that Siemens' ICFA claim is also time-barred because he does not
plead the date on which he discovered the alleged defects.  Def.'s Mot. 11.  Additionally,
for the first time in its reply, Pella argues that Wegner's ICFA claim is also time-barred
because he failed to plead what month in 2012 he discovered the alleged defect.[6]  Def.'s
Reply 2.  In other words, Pella asserts that to survive dismissal, Siemens and Wegner
would need to specifically allege either a violation of the ICFA within two years of filing
this action or that they first discovered a violation of the ICFA within this period.  Id. at 3
n.2.

The Fourth Circuit's opinion in Goodman v. Praxair, Inc., 494 F.3d 458 (2007) is
instructive.  Goodman involved a breach of contract action under Maryland law.  Id. at
461.  The defendant moved to dismiss, arguing that the plaintiff's claims were barred by

---

[6] Although "[t]he ordinary rule in federal courts is that an argument raised for the
first time in a reply brief or memorandum will not be considered," Clawson v. FedEx
Ground Package Sys., Inc., 451 F. Supp. 2d 731, 734 (D. Md. 2006), the court considers
Pella's argument regarding Wegner's ICFA claim since the court's ruling does not
prejudice Wegner.

the relevant statute of limitations.  <u>Id.</u> at 463.  The statute of limitations for breach of contract actions under Maryland law begins to accrue when the defendant breached the contract and the breach was or should have been discovered by the plaintiff.  <u>Id.</u> at 465. The plaintiff's complaint did "not provide facts sufficient to apply the discovery rule." <u>Id.</u>

The Fourth Circuit first noted that because the burden of establishing an affirmative defense, such as one based on the statute of limitations, is on the defendant, a motion to dismiss can only be granted if all facts necessary to the affirmative defense "clearly appear[] on the face of the complaint."  <u>Id.</u> at 464 (citation and emphasis omitted).  The court then rejected the defendant's contention that a plaintiff must allege when he discovered the breach in response to a statute of limitations defense, holding that while the plaintiff "might ultimately have to <u>prove</u> when he discovered a breach, he was not obligated to plead discovery of the breach in his complaint when the affirmative defense had yet to be demonstrated in the complaint or asserted by the defendants."  <u>Id.</u> at 465–66.  The court reversed the district court's grant of summary judgment, holding that the face of the complaint did not allege facts sufficiently clear to conclude that the statute of limitations had run.  <u>Id.</u> at 466.

The same logic applies to Siemens's and Wegner's ICFA claims.[7]  Neither plaintiff was required to plead discovery in the amended complaint, and the face of the complaint does not allege facts sufficiently clear to conclude that the statute of limitations had run on Siemens's and Wegner's ICFA claims (unlike Geetings's ICFA claim).

---

[7] Pella cites <u>Charlotte Telecasters</u> for the proposition that plaintiffs must plead discovery.  Def.'s Mot. 10.  However, that case dealt with pleading the judicially-created doctrine of fraudulent concealment for tolling purposes, not the discovery rule.  546 F.2d at 573–74.

Therefore, the court denies Pella's motion to dismiss with regard to Siemens's and Wegner's ICFA claims to the extent they allege fraudulent concealment.

### C.        Count II—Negligence

Pella argues that plaintiffs' negligence claim is barred by the economic loss rule. Def.'s Mot. 11.

"As a general proposition, the economic loss rule bars recovery in negligence when the plaintiff has suffered only economic loss." Annett Holdings, Inc. v. Kum & Go, L.C., 801 N.W.2d 499, 503 (Iowa 2011) (citation omitted); see also Neb. Innkeepers, Inc. v. Pittsburgh-Des Moines Corp., 345 N.W.2d 124, 126 (Iowa 1984) ("The well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.").  "[T]he line to be drawn is one between tort and contract rather than between physical harm and economic loss." Am. Fire & Cas. Co. v. Ford Motor Co., 588 N.W.2d 437, 439 (Iowa 1999) (quotation omitted).

In Iowa, recovery in tort is only available when harm results from "a sudden or dangerous occurrence, frequently involving some violence or collision with external objects, resulting from a genuine hazard in the nature of the product defect." Id. (citation and quotation marks omitted).  However, when a loss relates to a plaintiff's "disappointed expectations due to deterioration, internal breakdown or non-accidental cause, the remedy lies in contract," not tort.  Determan v. Johnson, 613 N.W.2d 259, 262 (Iowa 2000); see also Annett Holdings, 801 N.W.2d at 503 ("When two parties have a contractual relationship, the economic loss rule prevents one party from bringing a negligence action against the other over the first party's defeated expectations—a subject matter the parties

26

can be presumed to have allocated between themselves in their contract.").  That is, harm

falls on the "contract side [when] it was a foreseeable result from a failure of the product

to work properly."  Am. Fire, 588 N.W.2d at 439.

Whether plaintiffs' negligence claims are barred by the economic loss rule

requires the court "to determine if the economic loss sustained was sudden and dangerous

as in American Fire & Casualty or simply an unfulfilled expectation as in Determan."

Annett Holdings, 801 N.W.2d at 510.  In American Fire & Casualty, the Iowa Supreme

Court provided the following example, which the court finds instructive:

> [I]f a fire alarm fails to work and a building burns down, that is considered
> an "economic loss" even though the building was physically harmed.  It
> was a foreseeable consequence from the failure of the product to work
> properly.  But if the fire was caused by a short circuit in the fire alarm
> itself, it is not economic loss.

588 N.W.2d at 439 (citing Nelson, 426 N.W.2d at 124).

A federal court in Iowa applied the fire alarm analogy to a case with facts similar

to those presently before the court.  In Brown v. Louisiana-Pacific Corp., the plaintiff

alleged that trim board manufactured by the defendant was defective because it

prematurely deteriorated and resulted in water and structural damage to both the trim

board and other components of his home.  No. 4:12-cv-00102, slip op. at 1–3 (S.D. Iowa.

Jan. 18, 2013).  The court determined that the trim board's alleged failure was "more akin

to the fire alarm failing to signal a fire" because it was the "product's failure to be fit for

exterior purposes—its failure to resist degradation when exposed to normal exterior

moisture conditions—that resulted in the damage to Plaintiff's home."  Id. at 8.  Because

the damage was a foreseeable consequence of the product's failure to work properly, the

court held that damage to the plaintiff's home was purely economic in nature and that the

economic loss doctrine barred recovery in tort."  Id.

27

Plaintiffs' harm here is likewise more akin to the fire alarm failing to signal a fire because the harm resulted from the "failure of the Windows to perform as reasonably expected." Am. Compl. ¶ 109. The amended complaint does not allege that the harm was a result of some sudden and dangerous occurrence, see Am. Fire, 588 N.W.2d at 439 ("The common thread running through our cases rejecting recovery is the lack of danger created by the defective product."); Nelson, 426 N.W.2d at 125 ("Tort theory, on the other hand, is generally appropriate when the harm is a sudden or dangerous occurrence."), but rather concerns plaintiffs' "disappointed expectations due to deterioration, internal breakdown or non-accidental cause." Nelson, 426 N.W.2d at 125. Damage to the windows and other property is a "foreseeable result from a failure of the [windows] to work properly." Am. Fire, 588 N.W.2d at 439

Therefore, the court dismisses plaintiffs' negligence claims as barred by the economic loss rule.

### D.    Count III—Negligent Misrepresentation

Pella argues that plaintiffs' negligent misrepresentation claims should be dismissed because Pella did not owe plaintiffs a duty of care. Def.'s Mot. 15.

"As with all negligence actions, an essential element of negligent misrepresentation is that the defendant must owe a duty of care to the plaintiff." Sain v. Cedar Rapids Cmty. Sch. Dist., 626 N.W.2d 115, 124 (Iowa 2001); see also Jensen v. Sattler, 696 N.W.2d 582, 588 (Iowa 2005) ("Absent a special relationship giving rise to a duty of care, a plaintiff cannot establish negligent misrepresentation."). Although the Iowa Supreme Court has recognized that "the Restatement supports a broader view," the court has determined that, under Iowa law, "this duty arises only when the information is provided by persons in the business or profession of supplying information to others."

28

Sain, 626 N.W.2d at 124.  Where the defendant was "not in the business or profession of supplying information to [the plaintiff]," and the transaction was, instead, "an arms-length and adversarial transaction," the plaintiff cannot prevail on a negligent misrepresentation claim.  Jensen, 696 N.W.2d at 588.

While Iowa courts have noted that "[n]o clear guideline exists to define whether a party is in the business of supplying information," "manufacturers and dealers of merchandise have not generally been considered to be in the business of supplying information . . . [because] [t]heir businesses involve making, selling and servicing products, and any information provided during the course of the business is incidental." Greatbatch v. Metro. Fed. Bank, 534 N.W.2d 115, 117 (Iowa Ct. App. 1995).  On the other hand, courts have held that accountants and investment bankers are in the business or profession of supplying information to others.  Id.

Plaintiffs do not allege that Pella is in the business of supplying information. Because Pella is a manufacturer of windows, "contract and warranty law provides more appropriate remedies for misstatements made during the sale of merchandise."  Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc., 783 N.W.2d 684, 691 (Iowa 2010) (citing Meier v. Alfa-Laval, Inc., 454 N.W.2d 576, 581 (Iowa 1990)).

Because Pella is not in the business of supplying information, the court dismisses plaintiffs' negligent misrepresentation claims.

> ### E.     Counts VI, V, VI, and X—Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose, Breach of Express Warranty, and Violation of the MMWA

Pella argues that plaintiffs' breach of warranty claims are barred by the statute of limitations.  Def.'s Mot. 17.

29

Under Iowa law, breach of warranty claims are subject to a five-year statute of limitations.[8, 9] Iowa Code Ann. § 614.1(4); <u>Fell v. Kewanee Farm Equip. Co.</u>, 457 N.W.2d 911, 919 (Iowa 1990). The statute of limitations accrues upon delivery unless the warranty "explicitly extends to the future performance of the goods." Iowa Code Ann. § 554.2725(2). Pella delivered Wegner's windows at some time in late 2000, Am. Compl. ¶ 55, Geetings's windows at some time in late 2003, <u>id.</u> ¶ 60, and Siemens's windows by 2005, <u>id.</u> ¶ 69. Therefore, plaintiffs' warranty claims are barred unless the warranties extend to future performance.

As an initial matter, "[i]mplied warranties cannot, by their very nature, explicitly extend to future performance." <u>Employers Mut. Cas. Co. v. Collins & Aikman Floor Coverings, Inc.</u>, 2004 WL 840561, at *10 (S.D. Iowa Feb. 13, 2004) (citing <u>Marvin Lumber and Cedar Co. v. PPG Indus. Inc.</u>, 223 F.3d 873, 879 (8th Cir. 2000)); <u>see also City of Carlisle v. Fetzer</u>, 381 N.W.2d 627, 629 (Iowa 1986) ("[T]he almost universal rule is that a garden-variety implied warranty of fitness will not satisfy [the future

---

[8] The MMWA does not contain a statute of limitations, so courts have held such claims are governed by the same limitations period that applies to the underlying state law breach of warranty claims. <u>See</u> <u>Rooney v. Sierra Pac. Windows</u>, 566 F. App'x 573, 576 (9th Cir. 2014); <u>Highway Sales, Inc. v. Blue Bird Corp.</u>, 559 F.3d 782, 789 (8th Cir. 2009).

[9] At the hearing, plaintiffs argued that Iowa Code Ann. § 614.1(2A) and (11) set forth a fifteen-year limitations period for causes of action involving products and improvements to real property. However, the Iowa Supreme Court has held that § 614.1(2A) and (11) are statutes of repose. <u>Albrecht v. Gen. Motors Corp.</u>, 648 N.W.2d 87, 92 (Iowa 2002). "Statutes of repose are different from statutes of limitation, although they have comparable effects." <u>Bob McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc.</u>, 507 N.W.2d 405, 408 (Iowa 1993) (citation omitted). "A statute of limitations bars, after a certain period of time, the right to prosecute an accrued cause of action," whereas a statute of repose "terminates any right of action after a specified time has elapsed, regardless of whether or not there has as yet been an injury." <u>Id.</u> (citation omitted).

performance] limitation on the statutory discovery rule."). Therefore, plaintiffs' breach of implied warranty claims are time-barred.

The only remaining issue is whether Pella's express warranties explicitly extended to future performance. Courts have "vigorously enforced" the requirement that an express warranty explicitly extend to future performance. Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 223 F.3d 873, 879 (8th Cir. 2000). "If there is any ambiguity it must be interpreted against the existence of such a warranty." Sudenga Indus., Inc. v. Fulton Performance Prods., Inc., 894 F. Supp. 1235, 1238–39 (N.D. Iowa 1995). "The terms of the warranty must unambiguously and explicitly indicate that the manufacturer is warranting the future performance of the goods for a specified period of time." Id. at 1239 (emphasis in original).

Plaintiffs allege two separate breaches of express warranties. First, they allege that Pella breached various warranties by shipping defective windows not appropriate for their intended use. See Am. Compl. ¶¶ 152, 163. Plaintiffs also allege that Pella has failed to sufficiently repair or replace the defective windows according to the terms of the limited warranty. See id. ¶ 162.

The court will first consider alleged breaches of warranty which relate to the quality of the windows. Pella's limited warranty states[10]:

> If Pella is given notice of a defect in materials or workmanship occurring within ten (10) years from the date of sale by Pella or its authorized dealer, Pella shall, at its sole option: 1) repair or replace the defective part(s) or product(s) (with cost of labor included only within two years of the date of

---

[10] Pella notes that because Wegner, Geetings, and Siemens bought their windows in different years, they received slightly different versions of the limited warranty. Def.'s Resp. 18 n.9. However, Pella acknowledges that the "provisions . . . relevant to this motion are substantively identical." Id.

sale by Pella or its authorized dealer) or 2) refund the original purchase price.

Am. Compl. ¶ 42.

Courts outside of Iowa, interpreting an identical provision of the Uniform Commercial Code, have held that a repair or replace warranty does not explicitly extend to future performance.  See, e.g., Holbrook, Inc. v. Link-Belt Const. Equip. Co., 12 P.3d 638, 643 (Wash. Ct. App. 2000) ("Underlying [a] warranty to make needed repairs is the assumption that the goods may fall into disrepair or otherwise malfunction.  No warranty that the goods will not, is to be inferred from the warranty to make needed repairs."); Nebraska Popcorn, Inc. v. Wing, 602 N.W.2d 18, 23 (Neb. 1999) ("[T]he majority of other jurisdictions have found that a warranty given by a manufacturer or seller 'to repair or replace' does not constitute an explicit warranty of future performance of goods . . . and therefore the promise to repair or replace does not extend the commencement of the running of the statute of limitations.").  In Nebraska Popcorn, the Nebraska Supreme Court determined that the following repair or replace warranty did not extend to future performance:  "[Manufacturer] warrants . . . that it will repair or replace . . . any load cell supplied with a motor truck scale which . . . is defective in material or workmanship for a period of two (2) years from the date of the original shipment."   602 N.W.2d at 21, 25.

The limited warranties at issue here are "repair or replace" warranties similar to those in Nebraska Popcorn and do not clearly, unambiguously, and unequivocally guarantee the future performance of the windows.  Additionally, to the extent plaintiffs alleges that Pella provided express warranties outside the limited warranties, including on its website, and marketing materials, Am. Compl. ¶¶ 31–34, 154, the amended complaint contains no indication, and plaintiff makes no argument, that these "warranties"—

assuming they are warranties at all—explicitly extend to future performance. Therefore, the court dismisses plaintiffs' breach of express warranty and MMWA claims as time-barred to the extent they rely on warranties that the windows are free from defects.

Plaintiffs also allege that Pella has not "sufficiently repaired or replaced" the defective windows in their homes. Compl. ¶ 162; see also id. ¶ 75 ("Siemens has contacted Pella several times" and "Pella has sent service people to inspect the Windows in his home, but water intrusion continues" and "Pella has never replaced any of [Siemens's] windows."). Since such a breach of warranty is covered by the limited warranty, the court will not dismiss Geetings's and Siemens's breach of express warranty claims to the extent they relies on Pella's failure to repair or replace pursuant to the terms of the limited warranty. However, Wegner does not allege that he discovered any problems with his windows before 2012. Am. Compl. ¶ 58. Because he purchased his windows in 2000, id. ¶ 55, the limited warranty expired in 2010. Therefore, the court dismisses his express warranty and MMWA claims because he did not submit a claim that would be covered by the limited warranty. See Iowa Elec. Light & Power Co. v. Allis-Chalmers Mfg. Co., 360 F. Supp. 25, 34 (S.D. Iowa 1973) (dismissing breach of express warranty claim where the defect arose after the warranty had expired).

The court dismisses plaintiffs' breach of express warranty and MMWA causes of action to the extent they allege that Pella breached express warranties by shipping defective windows. The court also dismisses Wegner's breach of express warranty and MMWA claims to the extent he alleges that Pella failed to sufficiently repair or replace his windows. However, the court denies Pella's motion to the extent Siemens and

Geetings allege that Pella failed to repair or replace windows according to the terms of the limited warranty.

### F.    Counts VII & VIII—Fraudulent Misrepresentation and Fraudulent Concealment

Pella argues that plaintiffs' fraud claims should be dismissed because they are not pled with particularity as required by Rule 9(b).  Def.'s Mot. 25.  As discussed above, the court finds that plaintiffs have not pleaded any affirmative fraudulent act with particularity.  However, the court will allow plaintiffs to proceed with their fraud claims to the extent they rely on fraudulent omissions or concealment.

### G.    Count IX—Unjust Enrichment

Pella argues that plaintiffs' unjust enrichment claim is precluded by the existence of a sales contract.  Def.'s Mot. 26.

Under Iowa law, "[a]n express contract and an implied contract cannot coexist with respect to the same subject matter, and the law will not imply a contract where there is an express contract."  EAD Control Sys., LLC v. Besser Co. USA, 2012 WL 2357572, at *3 (N.D. Iowa June 19, 2012) (citing Scott v. Grinnell Mut. Reinsurance Co., 653 N.W.2d 556, 561 n.2 (Iowa 2002)); see also GreatAmerica Leasing Corp. v. Rohr-Tippe Motors, Inc., 387 F. Supp. 2d 992, 997 (N.D. Iowa 2005) (applying Iowa law and noting "the near universal rule of contracts that an express contract and an implied contract cannot co-exist").  "Of course, Iowa law permits a party to plead unjust enrichment in the alternative to a breach of contract claim; indeed, many plaintiffs plead a theory of implied contract in the event that the asserted contract is unenforceable."  EAD Control Sys., 2012 WL 2357572, at *3.

Plaintiffs allege that the limited warranty is void because it is unconscionable and fails its essential purpose.  Am. Compl. ¶ 47.  Because plaintiffs dispute the validity of the limited warranty, dismissal of their unjust enrichment claim based on the existence of the limited warranty is not proper at this time.  See Clark v. Aaron's, Inc., 914 F. Supp. 2d 1301, 1310 (N.D. Ga. 2012) (refusing to dismiss unjust enrichment claim where the plaintiff disputed the validity of the contract at issue by alleging that it was void as unconscionable).

### H.     Count XI—Declaratory Relief

Pella argues that plaintiffs' claims for declaratory relief fail because they lack a substantive foundation and because they have an adequate remedy at law.  Def.'s Mot. 28–29.

The Declaratory Judgment Act states that

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C.A. § 2201.  The Declaratory Judgment Act is intended to help parties resolve legal disputes before either party can seek or has sought a coercive remedy through the courts.  10B Charles Alan Wright & Arthur A. Miller, Federal Practice and Procedure § 2751 (3d ed. 1998).  Courts have "long recognized the discretion afforded to district courts in determining whether to render declaratory relief."  Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 421–22 (4th Cir. 1998).

Declaratory relief is inappropriate at this stage, as the merits of plaintiffs' substantive claims have not been adjudicated.  See Kennedy v. MI Windows & Doors, Inc., No. 2:12-cv-2305, 2013 WL 267853, at *6 (D.S.C. Jan. 24, 2013); F.D.I.C. v.

OneBeacon Midwest Ins. Co., 883 F. Supp. 2d 754, 761–62 (N.D. Ill. 2012) (dismissing a declaratory relief claim that raised the same issue as a substantive legal claim already before the court); Vill. of Sugar Grove v. F.D.I.C., 2011 WL 3876935, at *9 (N.D. Ill. Sept. 1, 2011) ("We have discretion to decline to hear a declaratory judgment action and courts have exercised that discretion where a plaintiff seeks a declaratory judgment that substantially overlaps it substantive claims") (internal citations omitted); Monster Daddy LLC v. Monster Cable Prods., Inc., No. 6:10-cv-1170, 2010 WL 4853661, at *6 (D.S.C. Nov. 23, 2011) (dismissing three declaratory relief counterclaims because they "raise the same legal issues that are already before the court").

Therefore, the court dismisses plaintiffs' claims for declaratory relief.

## IV.   CONCLUSION

Based on the foregoing, the court **GRANTS IN PART AND DENIES IN PART** Pella's motion and **DISMISSES WITHOUT PREJUDICE** Geetings's ICFA claim; Siemens's and Wegner's ICFA claims to the extent they rely on affirmative misrepresentations and to the extent they seek treble damages; plaintiffs' negligence claims; plaintiffs' negligent misrepresentation claims; plaintiffs' breach of implied warranty claims; Wegner's breach of express warranty and MMWA claims; Siemens's and Geetings's breach of express warranty and MMWA claims to the extent they allege that Pella breached express warranties by shipping defective windows; plaintiffs' fraudulent misrepresentation and fraudulent concealment claims to the extent they rely on affirmative misrepresentations; and plaintiffs' declaratory relief claims.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 5, 2014**
**Charleston, South Carolina**